# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

KIRMAREY ELLINGTON,

        Petitioner,     :     Case No. 1:19-cv-672

  - vs -                        District Judge Douglas R. Cole
                                 Magistrate Judge Michael R. Merz

WARDEN,
  Southeastern Correctional Institution,

                                   :
        Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Kirmarey Ellington, is before the Court for decision on the merits on the Petition (ECF No. 1), the State Court Record (ECF No. 5), the Return of Writ (ECF No. 6), Petitioner's Reply (ECF No. 11), and the transcript of the video deposition of Frank Bryant (ECF No. 14, attachment 1).

**Litigation History**

Ellington was indicted by a Hamilton County grand jury on May 13, 2017, and charged with one count of aggravated burglary in violation of Ohio Revised Code § 2911.11(A)(2) with two firearm specifications, two counts of aggravated robbery in violation of Ohio Revised Code § 2911.01(A)(1), also with two firearm specifications, and one count of having a weapon while under

1

disability in violation of Ohio Revised Code § 2923.13(A)(3)(Indictment, State Court Record (ECF No. 5, Ex. 1).

At trial a jury found Ellington guilty as charged (Verdicts, State Court Record ECF No. 5, Ex. 11) and he was sentenced to an aggregate term of imprisonment of twenty-two years. The First District Court of Appeals affirmed the convictions and sentence. *State v. Ellington*, 2018 Ohio App. LEXIS 4082 (1st Dist. Sept. 19, 2018), appellate jurisdiction declined, 2018-Ohio-5209 (2018).

Ellington filed a petition for post-conviction relief (State Court Record ECF No. 5, Ex. 23) which the Common Pleas Court denied. *Id.* at Ex. 25. Ellington did not appeal, but instead filed the instant Petition for Writ of Habeas Corpus August 9, 2019, pleading the following grounds for relief:

> **GROUND ONE**: Juvenile adjudication as the basis for a conviction for having a weapon while under disability is unconstitutional.
>
> **GROUND TWO**: Prosecutor engaged in improper conduct during trial and closing argument.
>
> **Supporting Facts:** Prosecutor asked leading questions of witnesses on direct examination and informed the jury that petitioner had previously served a sentence in the Hamilton County Justice Center. The prosecutor misrepresented evidence regarding petitioner's alibi argument, misstated petitioner's statements in jailhouse phone calls and denigrated petitioner's defense counsel.
>
> **GROUND THREE**: There was insufficient evidence to convict.
>
> **Supporting Facts:** There were inconsistent eyewitness testimony of gun and description of assailant.
>
> **GROUND FOUR**: Ineffective assistance of counsel.
>
> **Supporting Facts:** Counsel failed to move for an acquittal pursuant to Crim.R. 29.

(Petition, ECF No. 1, PageID 5-10).

# Analysis

**Ground One: Use of Juvenile Adjudication as Predicate for Weapons Under Disability Conviction**

In his First Ground for Relief, Ellington claims the State unconstitutionally used his juvenile adjudication as the predicate offense for his conviction in this case of having a weapon while under a disability.

He raised this claim as his First Assignment of Error on direct appeal and the First District dealt with it summarily:

> In his first assignment of error, Ellington argues that the use of a juvenile adjudication as the basis for a conviction for having a weapon while under disability is unconstitutional. It is not. We overrule Ellington's first assignment of error on the authority of *State v. Carnes*, Slip Opinion No. 2018-Ohio-3256.

*Ellington, supra,* at *1-2.

*States v. Carnes* is now reported at 154 Ohio St. 3d 527 (2018). In *Carnes* the Supreme Court of Ohio held that a juvenile adjudication for conduct that would have been felonious assault if committed by an adult could be used as a predicate for an adult weapons under disability charge without violating the defendant's due process rights under either the Ohio or Federal Constitution.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Here the First District was presented with a straightforward question of federal constitutional law[1]: can a juvenile adjudication for an offense which would have been a felony if committed by an adult be used as the predicate offense for an adult conviction for having weapons while under a disability? *Carnes*, decided just a month before the First District's decision in this case, squarely held that it could be and the First District followed that precedent, as it was bound to do.

In his Reply Ellington relies on the decisions of the Supreme Court of Ohio in *State v. Bode*, 144 Ohio St. 3d 155 (2015), and *State v. Hand*, 149 Ohio St. 3d 94 (2016). In those two cases, considered and distinguished in *Carnes*, the Supreme Court of Ohio held that an uncounseled juvenile adjudication could not be used to enhance the penalty imposed on a later adult conviction. The court distinguished using a juvenile adjudication as a predicate, the question at issue here. It held the General Assembly could rationally decide that juveniles adjudicated on felony level offenses could be prohibited from possessing firearms as adults, unless they went through the process of having the disability removed, which Carnes had not done and Ellington does not claim to have done.

Ellington asserts the First District's decision is contrary to or an unreasonable application of Supreme Court precedent (Reply, ECF No. 11, PageID 1002, citing *McKeiver v. Pennsylvania*, 403 U.S. 528 (1971); *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Alleyne v. United States*, 570 U.S. 99 (2013); and *Johnson v. United States*, 576 U.S.___, 135 S. Ct. 2551 (2015). None of these cases has a holding anywhere near in point. In *McKeiver*, the Court held that accused juveniles were not entitled to trial by jury as a matter of due process.

---

[1] Ellington also claimed this use of a juvenile adjudication violated his rights under the Ohio Constitution. Federal habeas corpus is available only to remedy violations of the United States Constitution. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). Thus the Ohio constitutional question is not before this Court.

4

In *Apprendi* the Court held that any fact which increased the maximum punishment for a criminal offense is to be treated as an element of the crime on which a defendant has a right to trial by jury and to insist on proof beyond a reasonable doubt. When the element is a prior conviction or adjudication, as it was here, that means the state must prove the existence of the adjudication, usually by certified court records, and that the defendant on trial is the same person previously convicted or adjudicated. Here the element of the prior adjudication were submitted to the jury which found them beyond a reasonable doubt.

In *Alleyne* the Supreme Court held that any fact which makes a defendant liable to a mandatory minimum sentence must be treated as an element under *Apprendi*. And in *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), the Supreme Court found the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), to be unconstitutionally vague. None of these cases speak to use of a juvenile adjudication as a predicate for an adult charge.

Ellington makes an argument in his Reply that parallels Chief Justice O'Connor's argument in dissent in *Carnes*: using a juvenile adjudication as an element of an adult offense is contrary to the rehabilitative purposes of the juvenile justice system. But that is an argument properly addressed to the Ohio General Assembly. In habeas the District Court cannot decided what the state law or even the federal constitution al law should be, but only whether the state court's decision is aligned with Supreme Court precedent.

As the court held in *Carnes*, "It is basic hornbook law that the state under its police powers may impose restrictions on who may possess firearms." *Carnes* at 531, citing *State v. Taniguchi, 74 Ohio St. 3d 154, 157 (1995).* The analysis is made more complex by the Supreme Court's subsequent Second Amendment decisions in *District of Columbia v. Heller,* 554 U.S. 570 (2008),

5

and *McDonald v. Chicago*, 561 U.S. 742 (2010). But neither of those decisions calls into question the police power of the State to prohibit firearms possession by those who have committed felony-level offenses, no matter how young they may have been.

Ellington's First Ground for Relief is without merit.

**Ground Two: Prosecutorial Misconduct**

In his Second Ground for Relief, Ellington asserts the prosecutor engaged in prejudicial misconduct by (1) asking leading questions on direct examination, (2) telling the jury that Ellington had previously served a sentence in the Hamilton County Justice Center, (3) misrepresenting evidence regarding Ellington's alibi, (4) misstating the content of Ellington's calls from the jail, and (5) denigrating defense counsel.

Ellington presented this claim as his second assignment of error on direct appeal which the First District decided as follows:

> In his second assignment of error, Ellington argues that the trial court erred by allowing the prosecutor to engage in improper conduct during trial and closing argument. The standard of review for prosecutorial misconduct is whether the comments and/or questions by the prosecution were improper and, if so, whether they prejudiced appellant's substantial rights. *State v. Treesh*, 90 Ohio St.3d 460, 465, 2001- Ohio 4, 739 N.E.2d 749 (2001). "To reverse a conviction based on prosecutorial misconduct, the alleged misconduct must have deprived the defendant of a fair trial." *State v. Lee*, 1st Dist. Hamilton No. C-160294, 2017-Ohio-7377, ¶ 17, citing *State v. Diar*, 120 Ohio St. 3d 460, 2008-Ohio-6266, ¶140, 900 N.E.2d 565.
>
> Ellington claims that the prosecutor's misconduct occurred during trial, when the prosecutor asked leading questions of a witness on direct examination and informed the jury that Ellington had previously served a sentence in the Hamilton County Justice Center, and during closing argument, when the prosecutor allegedly misrepresented evidence regarding Ellington's alibi argument,

6

> misstated Ellington's statements in jailhouse phone calls, and denigrated Ellington's defense counsel. Ellington objected to the prosecutor's mention of his previous jail sentence, but failed to object to the prosecutor's leading questions at trial and closing argument, and thus forfeited all but plain error on those issues. *State v. Dean*, 146 Ohio St. 3d 106, 2015-Ohio-4347, ¶191, 54 N.E.3d 80. After reviewing the entire record, including the trial transcripts, we do not agree with Ellington that the prosecutor's conduct in these instances was improper. We overrule Ellington's second assignment of error.

*Ellington, supra,* at *2-3.

Respondent raises a procedural default defense to Ground Two which the Magistrate Judge finds is well-taken as to sub-claims 1, 2, 4, and 5.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

In this case, Ohio has a relevant procedural rule, to wit, that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected. *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998). The First District enforced that rule by reviewing sub-claims 1, 2, 4, and 5 only for plain error. An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

The Sixth Circuit has repeatedly held that the contemporaneous objection rule is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012),*citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*,

8

320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010).

Ellington makes no argument to show cause and prejudice to excuse the lack of contemporaneous objection. Accordingly sub-claims 1, 2, 4, and 5 are procedurally defaulted.

The First District decided sub-claim three regarding Ellington's prior confinement in the Hamilton County Justice Center on the merits, but summarily, merely stating that the prosecutor's comment was not improper. *Ellington, supra.* at * 3. Even though the opinion was summary, it plainly was on the merits and thus warrants deference under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"). *Harrington v. Richter*, 562 U.S. 86 (2011).

Prosecutorial misconduct justifies federal habeas relief only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process" and resulted in prejudice. *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

> On habeas review, claims of prosecutorial misconduct are reviewed deferentially. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To be cognizable, the misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. (citation omitted). Even if the prosecutor's conduct was improper or even "universally condemned," *id*., we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair. Once we find that a statement is improper, four factors are considered in determining whether the impropriety is flagrant: (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were

9

> deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial. *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). Under [the] AEDPA, this bar is heightened by the deference we give to the . . . [Ohio] Supreme Court's determination of . . . [Petitioner's] prosecutorial-misconduct claims. *See Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002)("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights. But this case is before us on a petition for a writ of habeas corpus. So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law.").

*Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003).

The evidence supporting sub-claim three is found at page 451 of the trial transcript where the prosecutor is examining Detective Mark Longworth:

> Q. After Mr. Ellington was arrested, was he – did he serve some time in the corrections facility, the local jail?
>
> A. Yes.
>
> Mr. McEvilley: Objection
>
> The Court: Overruled.
>
> Q. And are phone calls – what can you tell us about the system for phone calls at the jail?
>
> A. Phone calls from the Hamilton County Justice Center are all recorded. And when the phone call is made, there is a warning saying the phone call is going to be recorded.
>
> Q. And did you review any of the phone jails calls that Mr. Ellington made?
>
> A. Yes.

(Transcript, State Court Record, ECF No. 5-1, PageID 563.) The testimony did not advert to any prior conviction of Ellington's, but rather to his pretrial detention in this particular case. In order to authenticate the content of the telephone calls, it was necessary to lay a foundation for how

10

those particular calls came to be recorded. While perhaps that foundation could have been laid in a way that would not have adverted to the jail, any such oblique reference would probably have had the jurors guessing about how the calls were recorded. Given that it was necessary to lay a foundation for the calls, the Magistrate Judge agrees with the First District that this exchange does not show any prosecutorial misconduct.

In sum, Ellington's first, second, fourth, and fifth sub-claims of prosecutorial misconduct are procedurally defaulted and his third sub-claim is without merit.

**Ground Three: Insufficient Evidence to Convict**

In his Third Ground for Relief, Ellington argues that he was convicted on insufficient evidence, particularly because there were inconsistencies in the testimony of the eyewitnesses. Ellington presented this claim, along with a manifest weight of the evidence claim, to the First District as his fourth assignment of error. The First District decided that assignment as follows:

> In his fourth assignment of error, Ellington challenges the weight and sufficiency of the evidence used to convict him. Specifically, Ellington argues that the state's case was based on flawed eyewitness testimony and no forensic evidence. In reviewing a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and thereby created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997- Ohio 52, 678 N.E.2d 541 (1997). "Both 'the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'" *State v. McMullen*, 1st Dist. Hamilton No. C-960088, 1997 Ohio App. LEXIS 10, 1997 WL 5183, *1 (Jan. 8, 1997), quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the

11

> prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.
>
> Here, Ellington's convictions were based on eyewitness testimony, which is sufficient. See *State v. Johnson*, 195 Ohio App. 3d 59, 2011-Ohio-3143, ¶71, 958 N.E.2d 977 (1st Dist.); see also *State v. Humberto*, 196 Ohio App.3d 230, 2011-Ohio-3080, 963 N.E.2d 162 (10th Dist.). Although no weapon or forensic evidence tied Ellington to the crimes, Frank Bryant, Deon Johnson, and Randall Johnson all were present at the scene, saw the robber, heard his voice during phone conversations with his accomplice, and identified Ellington as the robber. The jury heard all of the evidence, including inconsistent eyewitness testimony regarding the robber's gun and physical description, but nonetheless found the eyewitnesses credible. Their testimonies are of sufficient weight, especially when considered together, to support a finding of Ellington's guilt beyond a reasonable doubt. Therefore, the verdict is not against the manifest weight of the evidence.
>
> Ellington does not separately challenge the sufficiency of the elements for any of the crimes for which he was convicted. After reviewing the evidence, we hold that the state presented sufficient evidence to prove Ellington guilty of aggravated burglary, aggravated robbery, and having a weapon while under disability. Therefore, Ellington's fourth assignment of error is overruled.

*Ellington, supra*, at *5-6.

Ellington does not bring forward his manifest weight claim and indeed this Court could not consider it in habeas corpus. A weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

On the other hand, an allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the

crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. ___, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold

13

> the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Ellington argues there was no physical or forensic evidence to tie him to the crime and the First District agreed. Ellington instead bases his claim on the factors for eyewitness reliability

14

outlined in *Neil v. Biggers*, 409 U.S. 188 (1972):

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199; *accord, Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). But these are factors to be considered by a court in determining whether to suppress a pretrial identification made in suggestive circumstances created by police. Compare *Perry v. New Hampshire*, 565 U.S. 228 (2012)(pretrial screening of eyewitness testimony for reliability is required only when the police have arranged suggestive circumstances which lead to the identification.) Certainly it would be proper to argue to a jury that they should not accept an identification because of any one of the *Neil v. Biggers* factors. But once an admissible identification has been submitted to the jury, it is for them alone to decide whether they believe it. The First District recognized that there were inconsistencies among the eyewitness/victim accounts, but which evidence to believe is purely a jury question.

Because witness credibility is an issue for the jury alone, Ellington's Third Ground for Relief is without merit.

**Ground Four: Ineffective Assistance of Trial Counsel**

In his Fourth Ground for Relief, Ellington claims he received ineffective assistance of trial counsel when his attorney did not move for a judgment of acquittal under Ohio R.Crim.P. 29. A motion for judgment of acquittal makes the same claim, either at the end of the State's case or at the end of all the evidence, as is made in Ellington's Third Ground for Relief, to wit, that there is

15

insufficient evidence, considered under the *Jackson v. Virginia*, 443 U.S. 307 (1979), to allow a verdict of guilty. Ellington's trial counsel did not make such a motion[2].

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

---

[2] He did, however, make a post-verdict motion to that effect which, if meritorious, could have resulted in a dismissal.

16

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

Ellington properly raised this same claim on direct appeal as his Third Assignment of Error. Having concluded that there was sufficient evidence to convict, the First District also concluded it was not deficient performance under *Strickland* to fail to make a Rule 29 motion. *Ellington, supra*, at *3-4. That court applied the correct standard under *Strickland*. As with decisions on the merits of other questions of federal constitutional law, this decision is entitled to AEDPA deference; it

17

can be overturned only if it is an unreasonable application of *Strickland*. Because this Court agrees with the First District's decision on the sufficiency of the evidence, it likewise agrees with its decision on the ineffective assistance of trial counsel question. It cannot be ineffective assistance of trial counsel to fail to make an argument that was bound to lose.

In addition to the claims of ineffective assistance of trial counsel made before the First District and in the Petition, Ellington claims in his Reply that he received ineffective assistance of trial counsel in other ways: (1) failure to object to the prosecutor's closing arguments, (2) failure to file a motion to suppress identification, (3) failure to object to the use of the juvenile adjudication as an element of the offense of having weapons under disability. These three claims are procedurally defaulted because, although they were evident on the face of the direct appeal record, they were not raised in that proceeding and are barred from later consideration by the Ohio doctrine of *res judicata* in criminal cases. *State v. Perry*, 10 Ohio St. 2d 175 (1967). They also were not pleaded in the Petition and new claims cannot be added to a habeas case in the reply. *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).

Ellington's Fourth Ground for Relief is without merit.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not

be permitted to proceed *in forma pauperis*.

July 6, 2020.

s/ *Michael R. Merz*<br>United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.